CHIEF JUSTICE SIMPSON
delivered the opinion of the court :
Tipton brought this action against Triplett, on a note for one thousand dollars.
The defendant relied upon two grounds of defense. First. That the note was executed for part of the price of two slaves, viz: a woman and her child, who had been purchased of the plaintiff by the defendant; that the sale had been made with a warranty of title, and that the plaintiff had no title to the slaves at the time of the sale. Second. That the plaintiff had made the sale with a warranty that the slaves were sound, when in fact they were unsound, diseased, and of no value at the time of the sale. This latter defense assumed the form of a counter claim, and was attempted to be sustained as such.
The pleadings render it somewhat uncertain whether the purchaser relied upon an express warranty of title, or upon the warranty of title which the law implies on a sale of chattels in the possession of the vendor. In his amended answer, he alleged that the plaintiff, at the time of the sale, warranted the title, but whether it was an express or an implied warranty that was made, he did not state, nor did he state any other facts which tended to show the nature of the alleged warranty.
If it meant an express warranty of title, then no cause of action accrued upon it until the slaves were taken from the purchaser by the real owner; and as the defendant did not allege that any other person had asserted a title to the slaves, or that his possession of them had been disturbed, he failed to show any breach of the warranty.
If, however*, it can be construed to mean an implied warranty, or rather an undertaking on the part of the vendor, that he had title to the slaves, which is the warranty that the law implies where there is no express warranty of the title, then there was an immediate breach of this implied undertaking, *573 if, in fact, the vendor had no title at the time of the sale. (Scott vs. Scott, 2 Mar., 219; Chancellor vs. Wiggins, 4 B. Mon., 202.)
The controversy in relation to the title seems to have been abandoned in the court below, and therefore the bill of exceptions does not contain any evidence upon the question of title. The parties no doubt regarded the warranty of title which was relied on, as requiring an eviction, or something equivalent thereto, which not having occurred, no breach of the warranty, as they supposed, had been established. It is evident, therefore, that they treated it as an express, and not as an implied warranty.
If, however, it should be regarded as an implied warranty of title, it was incumbent on the purchaser to sustain the defense by proving that the vendor’s title was defective, and that in fact the slaves belonged to some other person. A mere denial of his title did not render it incumbent on the vendor to show that he had title. If the purchaser insists that there has been a breach of the implied undertaking by the vendor, he must establish, by proof, the facts which constitute the breach. If he had paid the purchase money, and had sued the vendor for a breach of his implied undertaking in relation to the title, he could not have recovered, unless he had proved that the vendor’s title was defective. He occupies here precisely the same attitude, and must, in order to sustain his defense, prove that the plaintiff did not have a valid title to the slaves.
Inasmuch, then, as the bill of exceptions does not contain any evidence in relation to the title, the verdict of the jury in favor of the defendant cannot be sustained on that ground. The fact that the slaves had previously belonged to another person, which appears to have been proved upon the trial, is not sufficient to overcome the presumption of title in the vendor, arising from his possession of the property at the time of the sale, such possession being prima facie evidence of title. And even that fact was not proved to show a want of title in the vendor, but to show that the slaves were unsound before they belonged to him.
*574 On the question of the unsoundness of the slaves at the time of the sale, the defendant based his right to relief alone upon the warranty of soundness, which he alleged was made by the plaintiff at the time of the sale. He did not allege the plaintiff had knowledge that the slaves were unsound, nor place his right to relief upon the ground that his vendor had perpetrated a fraud, by selling to him as sound, slaves which he knew to be unsound.
We do not deem it necessary to decide whether the warranty of soundness, which the defendant relied upon, was proved, inasmuch as we regard as improper and erroneous an instruction which was given to the jury by the court, and for which the judgment will have to be reversed, and the cause remanded for a new trial. On the next trial a different state of case may be presented, and, therefore, there would be neither any use or propi'iety in an investigation of the sufficiency of the evidence to establish the fact that a warranty of soundness had been made bjr the vendor at the time of the sale.
The instruction referred to is in the following language: “ Every fact material to the matters in issue in this suit, which is stated in Triplett’s answer, so far as it sets up a counter claim against Tipton, and which is not denied by Tipton’s answer thereto, the jury are bound to receive as true.”
By this instruction questions of law were submitted to the jury, instead of being decided by the court, as they should have been. Whether a fact which is alleged in any part of the pleadings be material or immaterial to the matters in issue, is a question of law; and whether it has been denied in the answer or the response, is also a question of law. The court should determine, not only what allegations are material, but also whether or not such material allegations have been specifically controverted, and inform the jury what facts are to be considered by them as true under the pleadings in the action.
By referring such questions of law to the jury for their decision, great injustice may be done to the parties. The jury may regard as material matters which are wholly irrelevant to the issue, and which the opposite party is not bound to controvert. They may be misled as to the real issue between the *575 parties, by having their attention directed to portions of the pleadings which are wholly foreign thereto, and by their inability to comprehend either the real cause of action or the defense which is relied upon.
This instruction was given at the instance of the appellee, and was calculated to mislead the jury. The appellant has a right to complain of it, as prejudicial to him, especially in a case like this, where it is doubtful whether the warranty relied upon was established by the testimony.
The burden of proof was upon the defendant in both the issues, and consequently he had a right to the conclusion of the argument before the jury.
Wherefore, the judgment is reversed, and cause remanded for a new trial and further proceedings consistent with this opinion.