Campbell, Chief Justice,
delivered the opinion of the court.
By this action the plaintiff, Lucia E. Blount, suing in her own right and as administratrix, own testamento an-nexo, of her deceased husband, seeks to recover certain taxes paid which the Commissioner of Internal Revenue, on due application, has refused to refund. From the agreed statement of facts upon which the case was submitted it appears that by three several deeds of conveyance, dated September 4, 1891, October, 5, 1891, and August 21, 1894, there was conveyed to Henry F. Blount and Lucia E. Blount, his wife, their heirs and assigns forever, certain real estate in the District of Columbia, commonly known as “ The Oaks.” Flenry F. Blount died in Washington October 10, 1917, testate, and by his will devised and bequeathed all of his property to Lucia E. Blount, his wife. The executor named in the will did not qualify, and letters of administration c. t. a. were duly granted to Lucia E. Blount. In Sep *341 tember, 1918, she filed a tax return in which as part of the gross estate of the decedent she made return of a half interest in “The Oaks” (describing the property), with the statement, “ one-lxalf of which was owned by the decedent as a joint tenant.” " This one-half interest was valued at $57,000. Some other items were returned, making the aggregate for the gross estate $58,570, from which were deducted the statutory exemption of $50,000 and some other items, leaving as the net estate, subject to taxation, $8,121.94. Upon this net estate a tax of 2 per cent, or $162.44, was paid by plaintiff without objection or protest. Subsequently, upon revieiv of this return by the commissioner, he decided that the value of the whole of said real estate should be included in the gross estate, and the gross estate was accordingly increased to $115,000. The plaintiff was required to pay an additional tax on this valuation and some other items, which she did in the sum of $5,047.18. Payment was made under protest, and having applied for a refund of it she brings this action.
The provisions of the statute relied upon to sustain the tax are several sections of the revenue act of 1916, 39 Stat. 756, 777. The amendments made by the act of March 3, 1917, 39 Stat. 1000, and by the act of October 3, 1917, 40 Stat. 300, are by the Government conceded to have no effect on the questions here presented. The sections of the act of 1916 wfitli w^hich we are directly concerned are as follows:
“ Sec. 201. That a tax (hereinafter in this title referred to as the tax), equal to the following percentages of the value of the net estate, to be determined as provided in section turn hundred and three, is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this act, whether a resident or nonresident, of the United States:
“ One per centum of the amount of such net estate not in excess of $50,000.”
Then follow a graduated scale of percentages.
“ Sec. 202. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated:
*342 “(c) To the extent of the interest therein held jointly or as tenants in the entirety by the decedent and any other person, or deposited in banks or other institutions in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have belonged to the decedent.”
By section 203 provision is made for determining the value of the net estate, by deducting certain items and an exemption of $50,000 from the ascertained gross estate. This net estate is taxed.
Á stipulation in the agreed statement of facts is to the effect that Henry F. Blount and his wife, Lucia E. Blount, held the real estate as tenants by the entirety. We may say here that the effect of the deeds being a matter of construction, the right of parties to stipulate their effect would be subject to question. In the instant case the stipulation is no doubt predicated upon the decisions of the courts in the District of Columbia. In Loughran v. Lemmon, 19 App. D. C. 140, it was held that a deed conveying land to a husband and wife, “ their heirs and assigns forever ” created in the husband and wife a tenancy by entirety and that there is nothing in the married woman’s act in force in the District “ that in any way defeats or destroys the common-law estate by entireties, as that estate subsists between husband and wife by purchase. The estate exists as at common law unaffected by statute.” (Op. 147.) This decision was made in 1901. In Marshall v. Lane, 27 App. D. C. 276, decided in 1906, the qffect of section 1031 in the then recently adopted code for the District of Columbia, 31 Stat. 1352, is stated with the result that a conveyance to husband and wife in virtue of that section constituted them tenants in common. See also Krous v. Krous (Sup. Ct. of Distinct), 41 Washington L. R. 71.
In view of these decisions, which may be regarded as stating not merely a rule of law but also a rule of property in the District, we do not disturb the stipulation of parties as to the character of estate held by the husband and wife under the conveyances of 1891 and 1894, adding, however, that unless these cases be controlling we would hesitate to *343 hold that the married woman’s act of 1869, 16 Stat. 45, as revised June 22, 1874, Revised D. C. Stat., p. 87, did not affect the common-law rule relating to estates by the entirety. This rule itself was only applicable to conveyances of the fee to husband and ivife, their heirs and assigns, which it was held made them tenants by the entirety as distinguished from joint tenants, because it was one of the essential characteristics of joint estates that there should be power of transferring in equal shares and one joint tenant could convey his interest, and that because of their legal entity or oneness neither the husband nor ivife could convey without the consent of the other. The result ivas that they were held to be seized as tenants by the entirety per tout but not per my.
The effect of this married woman’s act of 1869 on estates acquired by the ivife after marriage was, to say the least, in doubt prior to the cases above mentioned. In Carroll v. Reidy, 5 App. D. C. 59, it ivas decided that a conveyance of real estate to a husband and wife to hold as tenants in common, and not as joint tenants, creates in them a tenancy in common and not a tenancy by the entirety, the court following the rule stated in Hunt v. Blackburn, 128 U. S. 464, and stating (p. 64) that the spirit and purpose of the married woman’s act are to destroy the arbitrary and fictitious unity of husband and wife upon which the peculiar estate of a tenancy by the entirety was founded. In Alsop v. Fedarwisch, 9 App. D. C. 408, the court, explaining Carroll v. Reidy, supra, declares that it was not decided there, nor necessary to decide in the case then under consideration, what the effect of the married woman’s act was upon estates of tenants by the entirety. It was held in the earlier case that under the terms of the conveyance the estate conveyed was a tenancy in common, and in the later case the deed was held to convey either a joint tenancy or a tenancy by the entirety. The right of survivorship, incident to both of these estates, was, however, given effect. But it is- to be noted in this connection that survivorship in an estate held jointly rested upon a different consideration from survivorship in estates held as tenants by the entirety. In the latter the whole estate remained to the survivor “ under the original *344 grant.” See Hunt v. Blackburn, 128 U. S. 464, 469. “ The estate was peculiar, for by it both held the entire title. If one died, no new estate ivas conferred upon the survivor. The death simply destroyed the possibility of the decedent’s survivorship. * * * The survivor in such a case took nothing which he or she did not have before, acquired no new title, but took the whole by the original conveyance, for thereby he or she was invested with the entire estate.” Hoffman v. Stigers, 28 Iowa, 302, 306.
In Rathbone v. Hamilton, 4 App. D. C. 475, the question was upon the effect of the married woman’s act and the decision turned upon the view that the property in question, having been conveyed to the wife by the husband, did not constitute her statutory separate estate. The statute provided that property acquired by the wife during marriage in “ any other way than by gift or conveyance from her husband ” should be hers as absolute as if she were unmarried. Upon this provision of the statute the court concluded the statute did not affect it. The Supreme Court of the United States, however, took a different view, and held that the statute gave her the right of disposition, notwithstanding the provisions relied upon in the lower court’s opinion. Hamilton v. Rathbone, 175 U. S. 414. There is much conflict in the authorities upon this question. Decisions of the State courts may be found oh either side of it, but it seems to us that the better reasoning is on the side of those which hold that since the married woman’s Jaw necessarily destroys the legal unity — the oneness — of husband and wife, the reason for the common-law rule 'ceases to exist. The right of the husband at common law to'the wife’s personal property and dioses in ■ action, the right to hold and enjoy the rents and profits of her real estate, the right to her earnings, are taken away by the statute. The' acts of 1869 and 1874 provided, prior to the conveyance to Henry F. Blount and Lucia E. Blount, his wife, that a married woman’s right to property acquired by her during marriage should be as- absolute as if she were unmarried. It provided that she could convey or devise .her property, qr any interest therein, as if she were unmarried. The Supreme Court *345 held that she could devise property that came to her from her husband. Hamilton v. Rathbone, supra. It was pertinently asked in Hoffman v. Stigers, supra, “ If she may take title in her own right and may convey as other persons, what becomes of the idea of legal unity ? ” If by the mention of the name of her husband as a grantee, she takes no interest, though “ seised per tout” until the husband die and she survive him, what effect is given to the statute providing that her right to property acquired “ shall be as absolute as if she were unmarried?” See Thompson v. Thompson, 218 U. S. 611, 615. Certainly the husband thought they were joint owners of the property, because he undertook to devise it to the wife, and she thought he was a joint owner, because she returned a one-lialf interest for taxation. We content ourselves with citing some cases sustaining the view that the married woman’s law defeats estates by the entirety, in the absence of express terms in the conveyance to husband and wife. Clark v. Clark, 56 N. H. 105; Hoffman v. Stigers, 28 Iowa 307; Cooper v. Cooper, 76 Ill. 57; Walthall v. Goree, 36 Ala. 728; Wilson v. Fleming, 13 Ohio 68; Whittlesey v. Fuller, 11 Conn. 337; Kerner v. McDonald, 60 Nebr. 669; see also In re Klatzl, 216 N. Y. 83, and Buttlar v. Rosenblath, 42 N. J. Eq. 651.
In somp of-the States where it is held that the married woman’s acts do not- abrogate the common-law doctrine of tenants by the entirety, it is also held that these acts do affect the right of the husband to the rents and profits from the estate during coverture. They hold that the wife is endowed with the capacity during the joint lives to hold in her' possession, as a single female, one-half the estate in common with her husband. See Buttlar v. Rosenblath, 42 N. J. Eq. 651, 657; In re Klatzl, supra.
, I-h our opinion it is important to determine the character •of the estate held by the parties in order to determine the amount of the tax. If the estate conveyed to the husband and wife was a joint estate, the tax would apply to the one-lialf interest of the husband, whether the transfer of that interest was effected by the rule of survivorship applicable *346 to joint estates or was effected by the husband’s last will and testament.
On the other hand, if the estate of the husband and wife was tenancy by the entirety with all the incidents of such an estate at common law, then nothing was transferred to the wife by the husband’s will or ‘by her mere survivorship because she took the entire estate under-the original grant'. See Palmer v. Mansfield, 222 Mass. 263; Matter of Lyon, 233 N. Y. 208; Brihl v. Martin, 263 Pa. 519. It was said in Hunt v. Blackburn, 128 U. S. 464, 469: Undoubtedly, at common lavq husband and wife did not take under a conveyance to them of land'jointly, as tenants in common or as joint tenants, but each became seized of the entirety per tout et non per my — ^the consequence of which was that neither could dispose of any part without the assent of the other, but the whole remained to the survivor under the original grant.” In express terms the tax is imposed by section 201 upon “ the transfer of the net estate of every decedent.”' See Woodward case, 256 U. S. 632. It is an estate tax, imposed not upon the gross estate but upon the net estate transferred, and rules for the ascertainment of the amount of this net estate are prescribed. See Woodward case, 56 C. Cls. 133, 150. In view of the plain language of the statute we need not consider the refinements as to “ death duties ” suggested by the Government’s contention. In a late case it is said that what this law taxes is not the interest to which legatees or devisees succeeded on death, but the interest of the decedent which ceased by reason of his death. See Y. M. G. A. v. Davis, 264 U. S. 47. But this does not mean that the tax is upon an estate which ceases by reason, of the death. It would hardly be contended that this statute imposes a tax on an estate for life held by one at the time of his death on the theory that the tax is upon an interest which ceases by reason of the death. It was said by Mr. Justice White, in Knowlton v. Moore, 178 U. S. 41, 57: “ Confusion of thought may 'arise unless it be always remembered that, fundamentally considered, it is the power to transmit or the transmission or receipt of property by death which is the subject levied upon by all death duties.” *347 Tlie tax liere is upon the transfer of an estate which passes from the decedent, and is not upon an estate which ceases with his death. See Knowlton v. Moore, supra; Lederer v. Northern Trust Co., 262 Fed. 52, 54; New York Trust Co. v. Eisner, 256 U. S. 345; Woodward case, supra. It follows that the tax 'should not be assessed against the estate of tenants by the entirety because the wife did not take as upon a transfer from the husband at his death, but took under the original grant, his estate ceasing. We think it doubtful whether subdivision (c) of section 202 contemplates estates by the entirety in their technical sense. It speaks of an interest held jointly, or as tenant in the entirety by the decedent, “ and any other person.” Only an estate held by the husband and wife could be held by the entirety. It seems to us this language applies to an interest that passes as part of the estate; that is, an estate held jointly or per my et per tout, by the moiety and by the whole. Giving-effect to the stipulation as to the character of the estate, the plaintiff should recover the amount of the tax collected by the commissioner upon the lands conveyed to the husband and wife, except as it is affected by her return. The act of 1916 is not retrospective. See Knox v. McElligott, 258 U. S. 546. On the other hand, treating the tenancy as a joint tenancy, the one-lialf interest of the husband passing to the -wife, the tax upon that interest was paid upon the tax return made by the ivife. As already stated, the plaintiff returned for taxation a one-half interest in the lands as having been held “by the decedent as a joint tenant,” and having paid the tax on this one-half interest voluntarily and Avithout protest she can not now recover the same. It folloAvs that plaintiff is entitled to recover the additional tax levied by -the commissioner on the land in question.
Judgment for plaintiff in the sum of $2,425.06, with interest from March 7, 1921, to March 3, 1924, amounting to $434.49, making a total of $2,859.55. And it is so ordered.
GRAHAM, Judge; Hay, Judge; DowNey, Judge, and Booth, Judge, concur.