STUART TURLINGTON, ADMR. OF B. C. LUCAS, DECEASED,
v. PHEBE LUCAS.

(Filed 17 October, 1923.)

**1. Estates—Husband and Wife—Entireties—Right of Survivorship.**

The right of survivorship exists between husband and wife in devises or conveyances of land to them in entirety, which, during the continuance of this estate, is not subject to execution for the debts of either, and this estate may not be severed without the conveyance of the sole title by the one to the other, and except by a divorce *a vinculo*.

**2. Same—Personal Property—Constitutional Law.**

The common-law rule giving to the husband the actual or potential ownership of the separate *choses in action* belonging to his wife by reducing them into possession is now changed by the Constitution of 1868, State Const., Art. X, sec. 6, giving to the wife the sole ownership of her separate estate.

**3. Same.**

The right of survivorship recognized as now existing between husband and wife as to lands held by them in entirety does not apply to personal property so held.

**4. Same—Mortgages—Executors and Administrators.**

Where a husband and wife convey to a third person lands held by them in entirety and receive bonds from the purchasers, secured by a mortgage thereon for part payment of the purchase price, the bonds so received are regarded and dealt with as personal property to which the *jus accrescendi* is inapplicable; and where the husband then dies, one-half the value of such bonds goes to his administrator, or personal representative, and the other half thereof is the property of his wife.

**5. Same—Limitation of Actions.**

The statute of limitations will not run against the estate of either the husband or wife in lands held by them in entirety, unless it is a bar to them both.

APPEAL by both parties from *Horton, J.,* at May Term, 1923, of HARNETT.

Civil action. Submission of controversy without action, and the statement of facts are as follows:

"1. The plaintiff is the duly qualified and acting administrator of B. C. Lucas, deceased, and the defendant, Phebe Lucas, is the wife of said deceased, both plaintiff and defendant being residents of Harnett County, North Carolina.

"2. The said B. C. Lucas died intestate, a resident of Harnett County, North Carolina, on 21 February, 1923, leaving him surviving six children and a widow, who is the defendant in this action.

"3. That on or about 22 October, 1919, the plaintiff's intestate and his wife, the defendant, joining in the conveyance, sold and conveyed three tracts of land, containing in the aggregate 72.1 acres, to C. E. Strickland and E. B. Durham, and as part of the purchase price accepted fourteen bonds, in the sum of $500 each, secured by a deed of trust on the property, three of said bonds having been heretofore paid, leaving eleven of said bonds, aggregating $5,500 and interest, due serially on 1 January, 1924, to and including 1 January, 1934.

"4. That the aforesaid bonds and deed of trust were executed by C. E. Strickland and E. B. Durham to the plaintiff's intestate, B. C. Lucas, and wife, Phebe Lucas, said deed of trust being registered in the office of the Register of Deeds for Harnett County, in Book 117, page 364.

"5. That the plaintiff insists that there can be no entirety in personal property, and therefore the aforesaid bonds secured by said deed of trust should go into his hands, as administrator of the B. C. Lucas estate, and be distributed by him, share and share alike, among the heirs at law of his intestate, the personal estate being otherwise sufficient to pay debts, widow's year's support, etc.

"6. Defendant insists that tenancy by entirety in personal property exists under the laws of North Carolina, and that therefore she is lawfully entitled to all of said bonds and deed of trust.

"7. It is agreed that in the event plaintiff is successful in maintaining his position then he, as administrator, is to pay the court costs of this controversy; otherwise the same is to be paid by the defendant."

The court rendered the following judgment:

"It is thereupon ordered, considered and adjudged that the estate of entirety in personal property does not obtain in North Carolina, and that the plaintiff is entitled to a one-half interest in and to the notes in controversy in this action as a tenant in common with the defendant, and that the defendant is entitled to a one-half interest in said property."

From the judgment both plaintiff and defendant excepted and appealed to this Court.

*L. L. Levinson for plaintiff.*
*W. P. Byrd for defendant.*

CLARKSON, J. The sole question raised by the controversy without action is: Does an estate by the entireties with the right of survivorship in personal property obtain in North Carolina?

This is the first time that this question has been presented to this Court for decision. There have been *obiter dicta* but no direct authority

that there can be no survivorship in personalty. Where a bond is made to a husband and wife, on the death of either does the entire interest in the bond go to the survivor? We are of the opinion that it does not and the parties hold the interest in common, share and share alike.

It is well settled in this State that when land is conveyed or devised to a husband and wife, nothing else appearing, they hold by entirety, and, on the death of either, the survivor gets the entire estate in the land. This is applicable to conveyance or devise "during their natural lives." The most recent authority in this State on the subject is by *Walker, J.,* in *Moore v. Trust Co.,* 178 N. C., 123, which is as follows: "The characteristics of the anomalous estate, which is denominated as one by the entirety, are well understood. Blackstone (Book 2, p. 182) defines this estate by these words: 'If an estate in fee be given to a man and his wife they are neither properly joint tenants nor tenants in common; for husband and wife being considered one person in law, they cannot take the estate by moities, but both are seized of the entirety *per tout et non per my,* the consequence of which is that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain in the survivor.' Mordecai's Law Lectures (1907), 559. This Court has held that the husband is entitled to the income, increase or usufruct of the property. *Long v. Barnes,* 87 N. C., 329; *Simonton v. Cornelius,* 98 N. C., 437; *Bruce v. Nicholson,* 109 N. C., 204; *Greenville v. Gornto,* 161 N. C., 341; *West v. R. R.,* 140 N. C., 620. The estate was predicated upon the fact that in law the husband and wife, though twain, are regarded as one—there being, in other words, a unity of person, which has been called the fifth unity of this estate, the others being of time, title, interest and possession, which also belonged to an estate by joint tenancy. When land is conveyed or devised to husband and wife, nothing else appearing, they take by the entirety, and upon the death of either, the other takes the whole by right of survivorship. 2 Bl., 182; *Topping v. Sadler,* 50 N. C., 357; Freeman on Cotenancy and Partition, sec. 64, and *Harrison v. Ray,* 108 N. C., 215, and the cases *supra,* beginning with *Long v. Barnes.* The statute (1784, ch. 204, sec. 5; Revisal of 1905, sec. 1579) abolishing the right of survivorship in joint tenancies does not apply to this estate. *Motley v. Whitemore,* 19 N. C., 537; *Todd v. Zachary,* 45 N. C., 286; *Woodford v. Higly,* 60 N. C., 234."

The decision in the above case goes thoroughly into a discussion of this peculiar estate, with a concurring opinion by *Clark, C. J.* *Allen, J.,* in *Freeman v. Belfer,* 173 N. C., 581, and *Hoke, J.,* in *McKinnon v. Caulk,* 167 N. C., 411, have written interestingly on this subject in sus-

taining the views above expressed. See, also, *Odum v. Russell,* 179 N. C., 6; *Jernigan v. Evans,* 180 N. C., 89; *Roberson v. Griffin,* 185 N. C., 38.

This peculiar estate has come down to us from the common law, and we deduce from the authorities in this State:

That if an estate be given to A, B, C, and A and B are husband and wife, they being one person, will take a half interest, and C will take the other half.

That neither husband nor wife can dispose of their interest, or any part thereof, without the assent of the other. The deed of either without the joinder of the other is void. Nor could a partition of the estate be had.

That neither can such land be sold under execution or order of court, nor can the interest of either husband or wife be thus sold.

That one cannot be barred by the statute of limitations unless the other be barred also.

That this rule applies to devises to man and wife, contracts to convey land to man and wife, and likewise applies to a gift or devise to a man and his wife "during their natural lives."

That the interest and control is in the husband during the existence of the joint estate, or the joint lives of the two parties.

Neither can convey during their joint lives so as to bind the other or defeat the right of survivor to the whole estate. Subject to the limitation above named, the husband has the same rights in it which are incident to his own property. By the overwhelming weight of authority the husband has the right to lease the property so conveyed to him and his wife, which lease will be good against the wife during coverture, and will fail only in the event of her surviving him.

That the unity or entirety of the estate may be destroyed or dissolved by the joint acts of the parties, and the estate which was entire turned into a tenancy in common or into one in severalty, each taking separately a share thereof to be determined by them.

A divorce *a mensa et thoro* does not destroy the unity or entirety, but a divorce *a vinculo* does, as it destroys the unity and will convert the estate by entirety into one in common.

That a conveyance of land in fee to husband and wife, they take by entireties with right of survivorship, and during their lives the lands are not subject to the debts of either, except with consent of both properly given.

That the interest of neither becomes subject to the lien, or any proceeding to sell for the satisfaction of any judgment during their joint lives; nor can the interest of either be reached by the trustee in bankruptcy during their joint lives.

Mr. Mordecai, in his Law Lectures, Vol. 1 (2d Ed.), p. 608, says: "The unity of man and wife, to the extent of being but one person in law, has been severed to a considerable extent by the Constitution of 1868; for the husband can now convey directly to his wife, and thereby pass the legal title. And by complying with the provisions of the statute, the wife may convey directly to the husband. But notwithstanding this practical severance of their unity, the law as laid down by Blackstone remains the law in this State to this day. In this instance the maxim, *cessante ratione,* etc., seems to sleep."

This anomaly does not prevail in reference to personal property. *Clark, C. J.,* in *Gooch v. Bank,* 176 N. C., 216, says: "The estate originated in feudal reasons, that when the wife died the land should go to the husband by survivorship; *but there was no such reason as to the personal property of the wife* (italics ours), which became absolutely the property of the husband on marriage. There was no estate by entireties in personalty in England, and it has been abolished as to realty by the Married Woman's Act of 1882. *Thornley v. Thornley,* 2 Ch. Div. (1893), 229. The estate is an exception to the general rule, that where there is a conveyance or devise to two, they should hold as tenants in common, and gave to the husband survivorship in the wife's realty, of which he had the income only, and not the absolute property, as he had of her personalty. . . . In this State we have no decision holding that there is an estate by entirety in personalty, and there is no reason in this case, and at this late day, to extend it to personalty, for the point does not arise on the facts in this case, and the judge below made no ruling upon it. The objection urged to the estate by entireties is not only that it is an anomaly in our judicial system, without any statute recognizing it, and that it is contrary to our policy as to property rights of women, as stated in the Constitution, but that it abstracts the property embraced in it from liability to debt during the joint lives, and that during all this time the husband enjoys the income from the wife's half of the property, as well as from his own half. Whatever force may be given to these objections, the matter may well be left to the lawmaking department of the government. This Court has more than once suggested the abolition of the estate by entireties to the Legislature. *Bynum v. Wicker,* 141 N. C., 96; *Finch v. Cecil,* 170 N. C., 74, 75."

*Clark, C. J.,* in *Moore v. Trust Co.,* 178 N. C., 128, says: "I concur in all that is so clearly and convincingly stated in the opinion of *Walker, J.,* and for the additional reason that when the land was converted into money the estate by entireties ceased, for in England, whence was derived this anomalous estate, *there was never any estate by entireties in personalty.*" (Italics ours.)

The authorities in other States are conflicting. The text writers differ. Schouler's Domestic Relation (3d Ed.), latter part of section 193, says: "And the drift of modern policy, we may add, is unfavorable to extending to personalty this rule of survivorship, applicable originally to real estate."

"No Tenancy by the Entirety in Personal Estate.—We shall see, in another chapter, that if real estate is conveyed by deed to a husband and his wife, this creates in them a peculiar kind of tenancy, known as tenancy by the entirety; the consequence of which is, that during the coverture neither can alien the land to the prejudice of the rights of the other, and on the dissolution of the coverture by the death of one of them, the survivor takes the whole. Nothing of this sort is known in respect of personal property. Since the wife cannot own personal property in her possession in her own right, but whatever title she has to such property vests in the husband, if a chattel is given or sold to husband and wife jointly, the title passes wholly to him." Bishop on the Law of Married Women, Vol. 1, sec. 211.

"It is generally considered that there may be a right of survivorship in choses in action held in the name of husband and wife, but the courts are not wholly agreed as to this." 30 C. J., p. 574, sec. 107. In the same section we read: "Other courts, however, hold that estates in entirety may exist only in lands and not in personalty of any kind," citing numerous authorities under note 28.

There are a great many States that now hold that estates by entirety in personal property with the right of survivorship still exists. *In re Sloan,* 254 Pa., 346.

*In re Klenke's Estate,* 210 Pa., 572, citing *Bramberry Appeals,* 156 Pa., 628. In this latter case the original deed was made to Bramberry and wife, and they sold the land, and the vendees gave a bond and mortgage to secure the purchase price to both.

In *Den v. Hardenberg* (5 Halsted, 42 N. J.), reported in 18 Am. Dec., p. 371 (this was a deed, to husband and wife, of land) the whole matter is exhaustively treated in note to this case, and the position of Bishop, *supra,* criticised. *Boland v. McKowen,* 189 Mass., 563; *Phelps v. Simons,* 159 Mass., 415. See, also, 13 R. C. L., sec. 128, which quotes Bishop, and says: "There is authority that supports this view. This does not seem, however, to be in accord with the better authorities, and there seems to be no valid reason why such a tenancy may not exist as regards personal property."

A great many States hold that estates by entireties in personal property with the right of survivorship do not exist.

It is, however, equally well settled in Michigan that there can be no estate by the entirety in personal property. *In re Berry,* 247 Fed., 700,

stating rule obtaining in Michigan, no survivorship as to personal property. The same rule applies in New York. *In re McKelway,* 221 N. Y., 15, citing *In re Albrecht,* 136 N. Y., 91. See *Whittlesey v. Fuller,* 11 Conn., 340; *Sergeant v. Steinberger,* 15 Am. Dec., 553; 2 Ohio, 305; *Wilson v. Fleming,* 13 Ohio, 68; *Hoffman v. Stigers,* 28 Iowa, 307.

We could write *ad infinitum* on this ancient interesting legal heirloom that has come down to us from the common law. At common law, when a man married a woman her personal property and choses in action belonged to the husband; he could reduce them into possession.

"So it is also of chattels personal (or choses) in action, as debts upon bond, contracts, and the like: these the husband may have if he pleases; that is, if he reduces them into possession by receiving or recovering them at law. And upon such receipt or recovery they are absolutely and entirely his own, and shall go to his executors or administrators, or as he shall bequeath them by will, and shall not revest in the wife. But if he dies before he has recovered or reduced them into possession, so that at his death they shall continue *choses in action,* they shall survive to the wife; for the husband never exerted the power he had of obtaining an exclusive property in them. And so, if an astray comes into the wife's franchise, and the husband seizes it, it is absolutely his property; but if he dies without seizing it, his executors are not now at liberty to seize it, but the wife or her heirs; for the husband never exerted the right he had, which right determined with the coverture. Thus, in both these species of property the law is the same in case the wife survives the husband; but in case the husband survives the wife, the law is very different with respect to *chattels real* and *choses in action;* for he shall have the *chattel real* by survivorship, but not the chose in action, except in the case of arrears for rent due to the wife before her coverture, which, in case of her death, are given to the husband by statute, 32 Hen. VIII, ch. 37. And the reason for the general law is this: that the husband is in absolute possession of the *chattel real* during the coverture, by a kind of joint tenancy with his wife; wherefore the law will not wrest it out of his hands and give it to her representatives; though, in case he had died first, it would have survived to the wife, unless he thought proper in his lifetime to alter the possession. But a *chose in action* shall not survive to him, because he never was in possession of it at all during the coverture; and the only method he had to gain possession of it was by suing in his wife's right; but as after her death he cannot (as husband) bring an action in her right, because they are no longer one and the same person in law, therefore he can never (as such) recover the possession. But he still will be entitled to be her administrator, and may, in that capacity, recover such things in

19—186

action as become due to her before or during the coverture." 2 Blackstone's Com. (Lewis Ed.), Vol. 2, sec. 434.

So, at common law, if a bond was made, as in the instant case, to B. C. Lucas and wife, Phebe Lucas, an estate by entirety, with right of survivorship, would not exist. The wife's interest in the choses in action would belong to the husband at common law, and he had a right to reduce it into possession, and all the personal estate owned by the wife at any time during the coverture became actually or potentially the absolute property of the husband. This is changed by the Constitution of 1868.

"The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed, and, with the written assent of her husband, conveyed by her as if she were unmarried." State Const., Art. X, sec. 6.

At common law, where real and personal property was made to husband and wife, there was survivorship in one and not in the other. We have stated the reasons for this difference.

The principles of justice should always prevail in the adjustment of the rights of parties. This is in accord with the spirit of the present age. Where there is no evidence that there was an intention of a gift, on which many of the decisions are based, the fundamental of equal rights should prevail, and a division of equal shares adjudged. It was this idea of natural justice, following the common law as we interpret it, in the *dicta supra* of *Chief Justice Clark,* that there was no survivorship in personal property, and each took share and share alike. The better reason, we believe, is with the opinion as expressed by the *Chief Justice.* We adhere to the position heretofore taken by the Court.

B. C. Lucas and wife, Phebe Lucas, each had a half interest in the bonds, and on the death of B. C. Lucas his administrator, the plaintiff, took a half interest in the bonds, and the other half interest belonged to Phebe Lucas, the defendant.

The judgment of the court was in accordance with law.

Affirmed.